IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| PETER K. NEWMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:18-cv-00088-TMR |
| | ) | |
| vs. | ) | |
| | ) | |
| OHIO CIVIL RIGHTS COMMISSION, et al. | ) | Judge Thomas M. Rose |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO DISMISS ALL 42 U.S.C. § 1983 CLAIMS
and
MOTION TO REMAND THE OHIO REV. CODE ANN. § 4112.06 REQUEST FOR
JUDICIAL REVIEW**

Defendants Ohio Civil Rights Commission, Leonard J. Hubert, Lori Barreras, Juan Cespedes, William Patmon III, Madu Singh, G. Michael Payton, Stephanie Bostos-Demers, Desmon Martin, Vera Boggs, Duffy Jamieson, Kathy Haley Ross, and Stephan Smith [*sic*, Stefan Schmidt] move this Court to dismiss all 42 U.S.C. § 1983 claims against all Defendants pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and to remand the Ohio Rev. Code § 4112.06 judicial review request. The reasons for this Motion are set forth in the attached memorandum.

Respectfully submitted,

MICHAEL DEWINE,
ATTORNEY GENERAL

*/s/ Patrick M. Dull*
Patrick M. Dull (0064783)
Lori Anthony (0068695)
Assistant Attorneys General, Civil Rights Section
30 East Broad Street, 15th Floor
Columbus, Ohio 43215-3428
patrick.dull@ohioattorneygeneral.gov
Phone: 614-466-7900; Fax: 1-866-401-2829

**MEMORANDUM IN SUPPORT**

**Introduction**

Plaintiff Peter K. Newman has brought 42 U.S.C. § 1983 claims against the Ohio Civil Rights Commission and twelve state employees for their roles in a Commission investigation. The Commission has discretion regarding how to conduct its investigations, *State ex rel. Westbrook v. Ohio Civ. Rights Com.*, 17 Ohio St.3d 215, 217, 478 N.E.2d 799 (1985), and Ohio district courts have dismissed similar § 1983 claims against the Commission and its employees, *Batavia Woods LLC v. Wainright, et al.*, S.D.Ohio No. 1:13-cv-00696, 2014 U.S. Dist. LEXIS 23056, at *9-*19 (Feb. 24, 2014); *Johnson v. Ohio Civ. Rights Comm.*, S.D.Ohio No. 2:06-cv-0626, 2007 U.S. Dist. LEXIS 3124, at *7 (Jan. 16, 2007); *Rhoades v. Ohio Civ. Rights Comm.*, N.D.Ohio No. 1:07 CV 0802, 2007 U.S. Dist. LEXIS 45523, at *13-14 (June 22, 2007). As a result, Mr. Newman's § 1983 claims should likewise be dismissed.[1]

Mr. Newman's complaint also seeks judicial review of the Commission's "no probable cause" decision pursuant to Ohio Rev. Code Ann. § 4112.06. Unlike his § 1983 claims, this is the proper method of review; however, the review request should be remanded to the Montgomery County Court of Common Pleas due to that court's exclusive jurisdiction under Ohio Rev. Code Ann. § 4112.06(F).

**I.    Background and summary of the Commission's statutory process.**

Mr. Newman filed a charge with the Ohio Civil Rights Commission alleging that the University of Dayton (UD) engaged in employment discrimination against him. The Commission investigated and declined to sue UD because the investigation concluded Mr.

---

[1] Mr. Newman has filed two nearly identical civil actions against the same Defendants: one addressing the Commission's investigation into his allegations of employment discrimination (the complaint addressed by this Motion), the other addressing the Commission's investigation into his allegations of public accommodation discrimination. Both civil complaints were removed simultaneously to this Court, and a Notice of Related Cases has been filed.

Newman was terminated, not due to discrimination, but instead due to his unsatisfactory performance. (Complaint, ¶ 84). In an attempt to force the Commission to sue UD on his behalf, Mr. Newman has filed the instant complaint against the Commission and twelve state employees.

### A. Mr. Newman's problems while employed at the University of Dayton.

While employed as a professor at UD, Mr. Newman felt that one of his students "treated him less favorably" than the student treated other law school professors due to his race, sex, and age. He complained to Kim Bakota, who conducted an investigation; however, Mr. Newman found her investigation to be "inadequate." (Complaint, ¶¶ 23-25, 41, 44, 86).

Mr. Newman also felt that UD began retaliating against him due to his complaint to Ms. Bakota, and so he complained about this retaliation to Amy Zavadil. (Complaint, ¶¶ 25-27). Mr. Newman then suspected more retaliation (including his eventual termination) due to his new complaint. (Complaint, ¶¶ 24, 27, 30, 104). After his termination, Mr. Newman filed a federal employment discrimination lawsuit against UD (referenced in paragraph 58 of his complaint).[2]

Mr. Newman also filed a charge of employment discrimination with Defendant Commission, alleging that UD had unlawfully retaliated against him. (Complaint, ¶ 30). As with UD's investigations, Mr. Newman found the Commission's investigation into his allegations to be inadequate, and so he has filed the instant lawsuit against the Commission and the twelve state employees who were involved in the investigation of his charge.

---

[2] Mr. Newman's federal employment discrimination lawsuit against UD asserts numerous claims, including the retaliation and termination discussed above. (Southern District of Ohio, Case No. 3:17-cv-00179-TMR). This lawsuit was dismissed on October 31, 2017. There is currently an appeal pending in the Sixth Circuit (Case No. 17-4241).

**B. The Ohio Civil Rights Commission's investigation process.**

By filing his charge, Mr. Newman initiated a Commission investigation into his allegations against UD. That investigation and its results are the basis of Mr. Newman's 38-page complaint critiquing the Commission's process and its discretionary decision to not sue UD.

Ohio law allows any person to file a charge alleging an unlawful discriminatory practice. Ohio Rev. Code Ann. § 4112.05(B)(1). The Commission then receives, investigates, and passes upon these charges. Ohio Rev. Code Ann. § 4112.04(A)(6). After receiving a charge, the Commission conducts an informal, *ex parte* investigation into the allegations. As noted in *Ramudit v. Fifth Third Bank,* 1st Dist. Hamilton No. C-030941, 2005-Ohio-374, ¶19.[3]

> When an individual files a charge of unlawful discrimination, the commission initiates a preliminary investigation, which is an informal procedure conducted by members of the commission staff. If the commission determines after that investigation that it is not probable that unlawful discrimination has occurred, it must notify the complainant that it will not file a formal complaint in the matter. Before the filing of a complaint, the procedure is informal and *ex parte*. Although the commission investigates the charge, it does not receive formal evidence.

See also *Stallings v. Goshen Dairy Stores*, 6th Cir. No. 95-3228, 1996 U.S. App. LEXIS 19128, at *11 (June 27, 1996) ("This court recognizes the informality inherent in claims that are rejected at the preliminary investigation level.").

As suggested in *Ramudit*, the Commission issues either a "probable" or "not probable" decision after each investigation. Ohio Rev. Code Ann. § 4112.05(B)(4). A "probable" decision means that the Commission pursues the allegations further: first by attempting conciliation, then by issuing an administrative complaint, and ultimately by holding an evidentiary hearing to assess whether unlawful discrimination actually occurred. Ohio Rev. Code Ann. § 4112.05(B)(4)-(5).

---

[3] Defendants recognize that this Court prefers citations to federal authority. Local Rule 7.2(b)(2). However, there are few federal cases addressing the finer details of Commission process; where such federal cases exist, however, they will be cited.

In contrast, a "no probable cause" decision means that the Commission investigated the allegations in the charge, but declined to pursue them further, and so did not issue an administrative complaint or hold an evidentiary hearing. Ohio Rev. Code Ann. § 4112.05(B)(4). This is what happened to Mr. Newman's charge – the Commission's found "no probable cause," declined to issue a complaint, and never held an evidentiary hearing regarding whether UD violated any law. Simply put, the Commission decided not to sue UD.

### C. The repercussions of a "no probable cause" decision.

There are no repercussions resulting from a Commission "no probable cause" decision, as it is not adjudicative. *Rhoades*, 2007 U.S. Dist. LEXIS 45523, at *13 (Commission "no probable cause" decisions are "non-binding, non-final, investigative and not adjudicative in nature"). Mr. Newman, however, sees enormous repercussions resulting from the Commission's decision to not sue UD: he hyperbolically claims "a substantial lasting impact" on his life, career, and reputation. (Complaint, ¶ 76).

The Commission's "no probable cause" decision has no legal impact on Mr. Newman. In fact, a person receiving a "no probable cause" decision can file their own civil complaint under Ohio Rev. Code Ann. § 4112.99 or Title VII making the same allegations as made in his or her charge. *Dickinson v. Zanesville Metro. Hous. Auth.*, 975 F.Supp.2d 863, 875 (S.D.Ohio 2013) ("in cases where the OCRC does not issue a complaint, *** the OCRC decision is not preclusive."); *Smith v. Friendship Village of Dublin*, 92 Ohio St.3d 503, 507, 2001-Ohio-1272, 751 N.E.2d 1010 ("the filing of an unlawful discriminatory practice charge with the [Commission] does not preclude a person alleging handicap discrimination from instituting an independent civil action under Ohio Rev. Code Ann. § 4112.99."). In sum, Mr. Newman may be disappointed that the Commission did not sue UD, but there was no other impact on him.

### D. The Commission has discretion when deciding to sue after an investigation.

The nature of the Commission's informal investigation brings Mr. Newman's arguments into sharper focus. Simply put, the bulk of his complaint seeks to impose a formal, adversarial standard upon the Commission's informal, *ex parte* investigations. Indeed, much of Mr. Newman's complaint contains arguments regarding burdens of proof, the *McDonnell Douglas/Burdine* burden-shifting framework, the *prima facie* case, pretext, and rebuttals. (Complaint, ¶¶ 2, 6, 33, 42-46, 53, 87-91, 97-101, 103-105).

Certainly, these formulas are used when analyzing the merits of adversarial civil actions, but they are not appropriate when applied to the Commission's informal investigation and decision to not issue a complaint. *Stallings*, 1996 U.S. App. LEXIS 19128, at *11 (during its preliminary investigation, "the [Commission] has not established adjudicatory procedures entitling [Stallings] to be heard at an adversary-oriented, evidentiary hearing on his charge of [age] discrimination against [Goshen Dairy]." [internal quotations and citations omitted]).

As noted by the Ohio Supreme Court, "the commission has discretion in determining whether to issue a complaint after an investigation." *Westbrook*, 17 Ohio St.3d, at 216. Given that the Commission does not receive formal evidence during its informal investigation, *Ramudit*, at ¶ 19, Mr. Newman's attempts to impose an adversary-oriented, evidentiary standard upon Commission investigations should be rejected. *Stallings*, at *11.

Here, the Commission's investigation concluded it was "not probable" Mr. Newman was terminated due to unlawful retaliation, but rather it was due to his "unsatisfactory performance." (Complaint, ¶¶ 84, 93, 100). Based upon this finding, the Commission understandably declined to accuse UD of unlawful discrimination. However, Mr. Newman argues that the Commission's reasons for not suing UD are "incorrect" and based on UD's "false" allegations about him.

5

(Complaint, ¶¶ 6-7, 35, 65, 68, 74, 76, 90, 93). Mr. Newman raised these same arguments before the Commission, and re-arguing them now in his complaint misses the point: the Commission has discretion when deciding whether to sue after its informal, *ex parte* investigation.

Defendants ask this Court to dismiss all of Mr. Newman's § 1983 claims, and remand his Ohio Rev. Code Ann. § 4112.06 judicial review request to its proper forum, the court of common pleas.

## II. LAW AND ARGUMENT

### A. Mr. Newman's 42 U.S.C. § 1983 claims.

Mr. Newman's § 1983 claims should be dismissed because the Commission's "no probable cause" decision is "non-binding, non-final, investigative and not adjudicative in nature. *** Therefore, any claimed 'breach of the duty' to investigate does not give rise to a constitutional violation amounting to the deprivation of property or liberty interests." *Rhoades*, 2007 U.S. Dist. LEXIS 45523, at *13-14 (June 22, 2007). See also *Batavia Woods*, 2014 U.S. Dist. LEXIS 23056, at *9-*19, and *Johnson*, 2007 U.S. Dist. LEXIS 3124, at *7 (dismissing § 1983 claims against the Commission and the state employees involved in its investigation).

The allegations in *Rhoades* are remarkably similar to Mr. Newman's. Like Mr. Newman, Mr. Rhoades called the Commission's investigation "fake and shallow," and claimed that Commission employees acted with prejudice, bias, and negligence, in violation of § 1983. *Rhoades*, 2007 U.S. Dist. LEXIS 45523, at *3-*7. The Court concluded that, because Commission determinations are non-binding, Mr. Rhoades "cannot sustain his civil rights claims against the OCRC or any of its employees pursuant to § 1983." *Id*, at *13-*14.

In addition to the *Rhoades*, *Batavia Woods*, and *Johnson* decisions, there are two main reasons to dismiss Mr. Newman's § 1983 claims. First, this Court lacks subject matter

jurisdiction, as the Defendants are not "persons" as required by 42 U.S.C. § 1983, and they also have both absolute and qualified immunity for their actions. Second, Mr. Newman's complaint fails to state a claim upon which relief can be granted because no federal rights are implicated – let alone violated – by an informal Commission investigation and "no probable cause" decision.

> **i.** **42 U.S.C. § 1983 is a vehicle to protect federal rights, not a tool to contest the results of a Commission investigation.**

42 U.S.C. § 1983 provides a remedy for when state actors violate federal rights. *Edwards v. Univ. of Dayton,* 142 F. Supp. 3d 605, 607 (S.D.Ohio 2015). It is not a bludgeon to force Commission employees to agree with Mr. Newman's allegations of discrimination.

The complaint repeatedly alleges that Defendants "erred" and made "incorrect" findings. (Complaint, ¶¶ 5-7, 16-18, 20, 35, 41, 49, 76, 83, 93). However, administrative officials are not liable under § 1983 "for mere mistakes in judgment, whether the mistake is one of fact or one of law." *Butz v. Economou*, 438 U.S. 478, 507, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

Mr. Newman also alleges that one person not named as a defendant, Investigator Charles Scandrick, urged a "probable cause" recommendation, but was "overruled" by his peers, supervisors, and legal counsel (all named as Defendants). (Complaint, ¶¶ 4-5, 19-20, 31-35). Mr. Newman then admits that it was the five Commissioners – not Mr. Scandrick, not his supervisors, not legal counsel – who made the final "no probable cause" determination after providing Mr. Newman with an occasion for reconsideration and an opportunity to appear before the Commissioners.[4] (Complaint, ¶¶ 9-11, 52-56).

---

[4] Mr. Newman asserts that this opportunity for reconsideration was a "sham" because Reconsideration Supervisor Vera Boggs had submitted a "proposed Letter" containing her "no probable cause" recommendation prior to his appearance. (Complaint, ¶¶ 7, 12). Mr. Newman's accusation is hollow; he admits that the letter was a *proposed* letter, which could have been rejected or modified. In fact, as Mr. Newman points out, one Commissioner voted to do exactly that. (Complaint, ¶¶ 11, 56).

Mr. Newman believes that his critiques should force the Commission to issue a complaint and hold an evidentiary hearing. (Complaint, ¶¶ 18, 70, 87, 91). In addition to discounting the Commission's discretion, *Westbrook*, 17 Ohio St.3d, at 216, Mr. Newman simply has no property right to an evidentiary hearing. *Salazar v. Ohio Civ. Rights Comm.*, 39 Ohio App.3d 26, overview, 528 N.E.2d 1303 (6th Dist.1987) ("The employee had no protectible property interest in an adversarial hearing because the Commission's administrative rules did not require such a hearing.").

Although Mr. Newman identifies two federal rights he claims were violated (equal protection and due process, Complaint, ¶¶ 61-78), he provides no support for these allegations.

### ii. This Court lacks jurisdiction to hear Mr. Newman's 42 U.S.C. § 1983 claims.

#### a. Civ.R. 12(b)(1) standard of review.

When challenging a court's subject matter jurisdiction under Rule 12(b)(1), a defendant can facially attack the plaintiff's complaint by testing the sufficiency of the pleading itself. *See DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). This is the attack presented here, as the face of Mr. Newman's complaint reveals the lack of jurisdiction.

While Mr. Newman's complaint contains several allegations, to the extent it challenges the Commission's investigation and "no probable cause" determination, this Court lacks jurisdiction. *Gilbert v. Correction Reception Ctr.*, S.D.Ohio No. 2:07-cv-624, 2008 U.S. Dist. LEXIS 70904, at *19 (Sep. 19, 2008) ("to the extent Plaintiff challenges the OCRC's 'no probable cause' determination and the adequacy of the investigation leading up to it, this Court lacks jurisdiction to consider his claim.").

8

      **b.    The Ohio Civil Rights Commission is not a "person" and so cannot be sued under 42 U.S.C. § 1983.**

Mr. Newman notes that the Commission is a state agency. (Complaint, ¶ 15). As an agency of the State of Ohio, the Commission not a "person" and therefore cannot be sued under § 1983, which only allows such actions against a "person." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983.").

As a result, Mr. Newman's § 1983 claims against the Commission should be dismissed because the Commission is not a "person" for purposes of the statute.

      **c.    The other Defendants have been sued in their official capacity, and so are not "persons" and cannot be sued under 42 U.S.C. § 1983.**

In addition to the Commission itself, Mr. Newman's complaint names twelve other Defendants. These Defendants will collectively be called the "State of Ohio Defendants."

State officials acting in their official capacities are "the State," and not "persons" under § 1983. *Will*, 491 U.S., at 71. This Court has dismissed a § 1983 action against Commission employees for this reason. *Batavia Woods*, 2014 U.S. Dist. LEXIS 23056, at *14-*19.

As an initial matter, Mr. Newman explicitly states that his procedural due process claims are "official capacity" claims. (Complaint, ¶ 78). As a result, Mr. Newman is unable to bring his procedural due process claims against the State of Ohio Defendants because, in their "official capacity," they are not "persons" for purposes of § 1983. *Will*, 491 U.S., at 71.

Although he fails to plead "personal capacity" in any of the numbered paragraphs of his complaint, Mr. Newman does makes one conclusory mention that the State of Ohio Defendants acted in "Their Official and Personal Capacities" in the caption to his First Cause Of Action (alleging equal protection and substantive due process violations). However, the rest of his

9

complaint lacks any facts supporting this bald allegation. Indeed, the complaint contains a litany of factual allegations demonstrating the opposite: that the State of Ohio Defendants acted solely within their official duties by receiving Mr. Newman's charge, investigating it, and passing upon it. (Complaint, ¶¶ 1-11). See Ohio Rev. Code Ann. § 4112.04(A)(6). Underscoring this point, Mr. Newman identifies these Defendants only by their work addresses (see complaint caption), as employees of the State (Complaint, ¶¶ 16-20), and by their job titles and duties (*Id*.). Consequently, these Defendants have been sued in their official capacities only and cannot be sued under § 1983. *Will,* 491 U.S. at 71; *Batavia Woods*, 2014 U.S. Dist. LEXIS 23056, at *19.

### d. The State of Ohio Defendants have absolute immunity.

Just as a judge and prosecutor cannot be sued by a party disappointed with their judicial or prosecutorial decisions, administrative officers responsible for deciding whether to proceed with a case are afforded absolute immunity from liability for those decisions. See *Butz*, 438 U.S. 478, 515-517; *Mack v. Ohio State Dental Bd*., 2001 Ohio App. LEXIS 1513, *15-*17.

As recognized in *Butz*, an individual disappointed by an administrative proceeding may react angrily and "seek vengeance in the courts." *Butz*, 438 U.S., at 515. Acknowledging this, the Court held that absolute immunity from suit was necessary. *Id*. While this concept certainly protects prosecutors and judges, the *Butz* case holds that agency officials making decisions about "initiating or continuing" an administrative process are also entitled to absolute immunity:

> We believe that agency officials must make the decision to move forward with an administrative proceeding free from intimidation or harassment. Because the legal remedies already available to the defendant in such a proceeding provide sufficient checks on agency zeal, we hold that those officials who are responsible for the decision to initiate or continue a proceeding subject to agency adjudication are entitled to absolute immunity from damages liability for their parts in that decision. *Butz*, 438 U.S., at 516.

The *Butz* analysis has been applied to the conduct of state actors during an agency investigation, as well. *Mack*, 2001 Ohio App. LEXIS 1513, *15-*16 ("Appellant argues that *Butz* and its progeny are inapplicable to this case because her complaints are based on appellees' conduct during an investigation, not during adjudication. We find appellant's argument without merit."). See also *Grybosky v. Ohio Civ. Rights Comm.*, 11th Dist. Ashtabula No. 2010-A-0047, 2011-Ohio-6843, ¶¶ 16-25 (holding Assistant Attorney General to be absolutely immune).

Here, each of the State of Ohio Defendants are accused of having a role in the decision to *not* initiate a Commission proceeding. Nevertheless, the same principle applies: they should be "free from intimidation or harassment *** for their parts in that decision." *Butz*, 438 U.S., at 516.

### e. The State of Ohio Defendants have qualified immunity.

The State of Ohio Defendants also have qualified immunity because their actions did not violate clearly established rights. In fact, clearly established precedent dictates that this Court should reject a § 1983 claim targeting the state actions at issue here. *Batavia Woods*, 2014 U.S. Dist. LEXIS 23056, at *19 ("given the strength of the precedent supporting their position, the Court thinks it appropriate to GRANT the motion to dismiss filed by the State of Ohio Defendants on the basis that we lack subject matter jurisdiction."); *Rhoades*, 2007 U.S. Dist. LEXIS 45523, at *13-14 ("Mr. Rhoades cannot sustain his civil rights claims against the OCRC or any of its employees pursuant to § 1983."); *Johnson*, 2007 U.S. Dist. LEXIS 3124, at *7.

The Supreme Court has stressed that, unless the plaintiff alleges the violation of a "clearly established" right, a defendant pleading qualified immunity "is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806 (1985). The reviewing court "need not consider the correctness of the plaintiff's version of the facts, nor even determine whether the plaintiff's allegations actually state a claim. All it need

11

determine is a question of law: whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or \*\*\* whether the law clearly proscribed the actions the defendant claims he took." *Mitchell*, 472 U.S., at 528.

The right allegedly violated must be sufficiently clear to put Defendants on notice that their *particular conduct* violates the federal right. *Nuovo v. The Ohio State Univ.*, 726 F. Supp. 2d 829, 851 (S.D. Ohio 2010) (The doctrine of qualified immunity "is inherently dependent upon the clarity of the legal constraints governing the particular conduct"). Here, the question of law is whether there is a "clearly established" right violated when the Commission decides not to sue.

There is no precedent identifying a "clearly established" federal right related to any action involved in investigating or processing a charge of discrimination. To the contrary, as noted above, precedent dictates that a court should reject a § 1983 claim targeting such actions. *Batavia Woods*, 2014 U.S. Dist. LEXIS 23056, at \*9-\*19; *Rhoades*, 2007 U.S. Dist. LEXIS 45523, at \*13-14; *Johnson*, 2007 U.S. Dist. LEXIS 3124, at \*7. In addition, the Commission simply has discretion regarding its investigations. *Westbrook*, 17 Ohio St.3d, at 217.

Because Mr. Newman identifies no clearly established federal rights violated by the Defendants' actions, qualified immunity attaches, and the § 1983 claims should be dismissed.

      **iii.      Pursuant to Civ.R. 12(b)(6), Mr. Newman's § 1983 allegations fail to state a claim for which relief can be granted.**

           **a.      Civ.R. 12(b)(6) standard of review.**

In deciding a motion to dismiss for failure to state a claim under Civ.R. 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). However, in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007), the Supreme Court stressed that the factual allegations "must be enough to raise a

12

right to relief above the speculative level." *Twombly,* at 555. And while Civ.R. 8 establishes a liberal system of notice pleading, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* at 555.

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009), the Court expounded upon the "two working principles" that underlie the *Twombly* decision. *Iqbal*, at 678. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to a state a claim. *Id.*, at 678. Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*, at 679. To establish "facial plausibility," a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, at 678.

### b. The complaint contains no facts to support an equal protection claim.

In support of his equal protection claim, Mr. Newman asserts that "the OCRC, though [*sic*] the individual Defendants, treated him differently than it treated similarly situated charging parties outside his protected classes (male, white, and age) when it failed to investigate three of his four retaliation claims and then issued a final order dismissing his charge." (Complaint ¶ 63).

This assertion appears for the first and only time in Paragraph 63. It fails to state a claim because Mr. Newman provides no factual basis to support any unlawful activity: there are no facts alleging a causal connection (i.e., that Defendants treated Mr. Newman differently because he is white, male, and of an unknown age), no facts alleging that any Defendant held a discriminatory animus against him, and no examples of any actual persons treated differently than he was treated (let alone treated differently *because* of race, sex, or age).

13

As the Supreme Court in *Twombly* noted, the allegations made in a complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S., at 555. Here, Mr. Newman fails to plead facts establishing the "facial plausibility" of any claim. *Iqbal*, at 678-679. As one court has noted, "The days of 'shoot first, ask questions later,' are over in the federal district courts." *Hamer v. Cty. of Kent,* W.D.Mich. No. 1:13-cv-504, 2013 U.S. Dist. LEXIS 186512, at *21 (Nov. 6, 2013); see also *Robertson v. Montgomery Cty. Dev. Ctr.*, S.D.Ohio No. 3:15-cv-251, 2016 U.S. Dist. LEXIS 71407, at *11-12 (June 1, 2016) ("*Twombly* has dictated that courts may no longer accept conclusory legal allegations that do not include specific facts necessary to establish the cause of action."). Mr. Newman's allegation lacks any supporting specific facts necessary to make his claim rise "above the speculative level," *Twombly*, at 555, and so this Court should dismiss it due to the failure to state a claim.

### c. Due process is not violated when judicial review is available.

Mr. Newman also claims that his due process rights were violated. (Complaint, ¶¶ 65-68, 72-78). However, before any Commission action become effective, it is first subject to judicial review and court enforcement. Ohio Rev. Code Ann. § 4112.06(A), (H). Because of these additional requirements, there can be no due process violations by the Commission's decision. *Stallings*, 1996 U.S. App. LEXIS 19128, at *10 ("These opportunities for administrative and judicial review [under § 4112.06] meet the threshold due process requirements."); see also *Rhoades*, 2007 U.S. Dist. LEXIS 45523, at *13-14 ("Due process is satisfied if there is an opportunity to be heard before any final order of the agency becomes effective.").

Moreover, the Commission's investigation process is not an interest protected by the Due Process Clause. *Johnson*, 2007 U.S. Dist. LEXIS 3124, at *6-7 ("the Due Process Clause does

14

not create a life, liberty or property interest in following state-created procedures. Put simply, there is no protected interest in the [Commission's] procedure itself.").

As noted above, the process granted by Ohio law amounts to the Commission receiving, investigating, and passing on charges filed with it. Ohio Rev. Code Ann. § 4112.04(A)(6). Mr. Newman received all of this and more, and he fails to cite any law entitling him to the laundry list of process demands outlined in his "Conclusion And Prayer For Relief." This is because there are no such entitlements, and therefore no due process violations.

In *Salazar* (39 Ohio App.3d 26, discussed above), plaintiff Vincent Salazar filed a charge alleging that his employer terminated him due to a disability. The Commission conducted an investigation, and ultimately found "no probable cause" to believe that he had been unlawfully discriminated against. Mr. Salazar petitioned for judicial review alleging denial of due process.

Similar to Mr. Newman, Mr. Salazar complained that the Commission should have permitted him to "inspect the contents of its investigative file in order to ascertain whether the investigator was doing a fair or adequate job." Also like Mr. Newman, Mr. Salazar argued that the Commission should have allowed him to present rebuttal evidence, and in general should have an investigation process that is more like an adversarial trial. (compare *Salazar*, 39 Ohio App.3d 26, at 29, with Complaint, ¶¶ 31, 53, 72, 78, Conclusion And Prayer For Relief).

Citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982), the court in *Salazar* held that although Mr. Salazar did have a property interest in filing a charge and in having the Commission pass upon it, there was no comparable property interest in the other items he demanded because Ohio law did not entitle him to such procedures. See Ohio Rev. Code Ann. § 4112.04(A)(6); *Salazar*, 39 Ohio App.3d 26, at 29-31; see also *Stallings*, 1996 U.S. App. LEXIS

15

19128, at *11 ("The OCRC procedures that guide a no probable cause finding, while failing to guarantee the trial-like hearing that [petitioner] desires, offer sufficient due process.").

Just as Mr. Salazar was not deprived of any Commission procedure conferred by the statute, Mr. Newman likewise received all the process he was due – he filed a charge, it was investigated, and the Commission passed upon it. Consequently, as Mr. Newman has failed to show any denial of due process, his § 1983 claims should be dismissed.[5]

### d. Mr. Newman's due process claims against the Commission mainly contest the actions of the University of Dayton.

Mr. Newman identifies two specific substantive due process violations for which he claims the Defendants are responsible: 1) he was deprived of his property interest in continuing to be an adjunct professor at UD, and 2) he was deprived of his liberty interest in continuing to work as an adjunct professor at UD. (Complaint ¶¶ 65-66, 74, 76).

Of course, Mr. Newman is no longer a professor at UD due to the decisions of UD, not the Defendants. Although he tries to blur responsibility, Mr. Newman admits that it was UD that made the decision to terminate him. (Complaint ¶ 43).

The Defendants are not responsible for Mr. Newman's termination; they merely looked into his subsequent allegations of retaliation, and decided not to sue UD. The Commission did not owe Mr. Newman the additional constitutional duty of suing UD, or otherwise forcing UD to re-hire him – especially when the Commission's own investigation concluded that Mr. Newman was likely fired due to his "unsatisfactory performance." (Complaint, ¶ 84).

---

[5] Regarding all the demands made by Mr. Salazar, the court prudently noted that "We believe that appellant's arguments concerning the kind of adjudicatory procedures followed, or, rather, the kinds not followed, by the commission at the preliminary investigation stage would be best addressed to the commission itself. That is the institution empowered by law to make the kind of changes which appellant seeks." *Salazar*, 39 Ohio App.3d, at 31.

16

### e. Mr. Newman provides no facts to support his allegation of bias.

Mr. Newman alleges that the Defendants violated his procedural due process rights by denying him "fair and impartial" investigators, and by not allowing him to cross-examine witnesses. (Complaint, ¶¶ 72-78). Mr. Newman was not entitled to cross-examine witnesses during the Commission's investigation. *Salazar,* 39 Ohio App.3d, 30 ("Ohio law has not conferred upon appellant an individual entitlement to an adversary-oriented, evidentiary hearing at the preliminary investigation stage of his handicap discrimination charge."); *Stallings*, 1996 U.S. App. LEXIS 19128, at *11.

Although he repeatedly calls Reconsideration Supervisor Vera Boggs "biased" (Complaint, ¶¶ 7, 18, 47, 76, 78, Conclusion and Prayer for Relief), Mr. Newman provides no facts to support his allegation, other than to note that Ms. Boggs sought information from UD. (Complaint, ¶¶ 7, 47: "Boggs instead became a biased advocate for UD by going out of her way to solicit new evidence from UD's lawyers in an attempt to shore up UD's defenses to Plaintiff's retaliation claims."). Oddly, Mr. Newman's allegation of bias actually reveals an investigation.

### f. The Commission's actions do not "shock the conscience."

Mr. Newman alleges that three actions of the State of Ohio Defendants "shock the conscience": 1) the Commission accepted UD's argument that certain documents were beyond the scope of Mr. Newman's charge or were otherwise protected by law from disclosure, 2) Reconsideration Supervisor Vera Boggs submitted a proposed "no probable cause" letter prior to Mr. Newman's appearance for his reconsideration request, and 3) the Commission decided not to

further investigate a new issue raised by Mr. Newman during his appearance before the Commissioners. (Complaint, ¶ 68). None of these actions "shock the conscience."[6]

The Commission has broad discretion regarding how it conducts its investigations. *Westbrook*, 17 Ohio St.3d, at 217. There is nothing shocking about the documents obtained by an investigator during the discretionary investigation or by a recommendation proposing a "no probable cause" finding. Likewise, the Commission's decision not to extend its investigation further following Mr. Newman's reconsideration appearance does not "shock the conscience."

Pursuant to *Westbrook, Stallings, Salazar*, and the rest, Mr. Newman was never entitled to any of the things he demanded at the investigatory stage. Consequently, he was not denied due process – or any other constitutional right – during the Commission's investigation. Accordingly, Mr. Newman's § 1983 claims should be dismissed.

### B. Mr. Newman's petition for judicial review.

Finally, Mr. Newman's complaint also presents an administrative appeal pursuant to Ohio Rev. Code Ann. § 4112.06. Unlike his § 1983 claims, Ohio Rev. Code Ann. § 4112.06 is the proper avenue to contest a Commission "no probable cause" decision. However, the Defendants respectfully ask that Mr. Newman's request for judicial review be remanded to the Montgomery County Court of Common Pleas.

In his complaint, Mr. Newman notes that the Ohio Courts of Common Pleas have exclusive jurisdiction over appeals of Commission rulings. (Complaint, ¶ 59). This is true. Ohio Rev. Code Ann. § 4112.06(F); *Gilbert*, 2008 U.S. Dist. LEXIS 70904, at *19. Pursuant to 28 U.S.C. § 1441(c)(2), the Defendants respectfully ask that Mr. Newman's judicial review request be severed and remanded to the Montgomery County Court of Common Pleas or, in the

---

[6] Actions that "shock the conscience," and are therefore sufficient to violate substantive due process, include actions that violate the "decencies of civilized conduct." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

18

alternative, remanded pursuant to 28 U.S.C. § 1367(c)(3) after this Court has dismissed Mr. Newman's § 1983 claims.

## III. CONCLUSION

For the above reasons, all of Mr. Newman's § 1983 claims against the Defendants should be dismissed, and his Ohio Rev. Code Ann. § 4112.06 request for judicial review should be remanded to the Montgomery County Court of Common Pleas.

Respectfully submitted,

MICHAEL DEWINE
ATTORNEY GENERAL

*/s/ Patrick M. Dull*
Patrick M. Dull (0064783)
Lori Anthony (0068695)
Assistant Attorneys General
Civil Rights Section
30 East Broad Street, 15th Floor
Columbus, Ohio 43215-3428
patrick.dull@ohioattorneygeneral.gov
lori.anthony@ohioattorneygeneral.gov
Phone: 614-466-7900
Fax: 1-866-401-2829

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Motion was filed with the Court's CM/ECF system, and served via U.S. mail, postage prepaid, upon plaintiff Peter K. Newman, 594 Garden Road, Dayton, Ohio 45419, on this 23rd day of March, 2018.

MIKE DEWINE
ATTORNEY GENERAL

*/s/ Patrick M. Dull*
Patrick M. Dull (0064783)