IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| PETER NEWMAN, | : | Consolidated Case No. 3:18-cv-88 |
| | : | (Case No. 3:18-cv-89) |
| Plaintiff, | : | |
| | : | Judge Thomas M. Rose |
| v. | : | |
| | : | |
| OHIO CIVIL RIGHTS COMMISSION, et al., | : | |
| | : | |
| Defendants. | : | |

---

**ENTRY AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS
(DOC. 5, CASE NO. 3:18-CV-88 AND DOC. 5, CASE NO. 3:18-CV-89),
REMANDING PLAINTIFF'S PETITIONS FOR JUDICIAL REVIEW TO THE
MONTGOMERY COUNTY COURT OF COMMON PLEAS, AND
TERMINATING THIS CASE**

---

This consolidated case is before the Court on Defendants' Motions to Dismiss all 42 U.S.C. § 1983 Claims and Motion to Remand the Ohio Rev. Code Ann. § 4112.06 Request for Judicial Review (Doc. 5, Case No. 3:18-cv-88 (the "88 Case"); Doc. 5, Case No. 3:18-cv-89 (the "89 Case")). Plaintiff Peter Newman ("Plaintiff") brought two separate lawsuits against the Ohio Civil Rights Commission (the "Commission") and twelve state employees for their roles in the investigation into charges that he made against the University of Dayton ("UD"). In both cases, prior to their consolidation, the Commission and Defendants Leonard J. Hubert, Lori Barreras, Juan Cespedes, William Patmon III, Madu Singh, G. Michael Payton, Stephanie Bostos-Demers, Desmon Martin, Vera Boggs, Duffy Jamieson, Kathy Haley Ross, and Stephan Smith [*sic*, Stefan Schmidt] ("Individual Defendants") moved to dismiss Plaintiff's § 1983 claims and remand his petitions for judicial review of the Commission's decisions to state court. Plaintiff's Motions are fully briefed and ripe for review. For the reasons below, the Court **GRANTS** the Motions to

Dismiss and **REMANDS** the petitions for judicial review to the Montgomery County Court of Common Pleas.

I. **BACKGROUND**[1]

Plaintiff, who is a former adjunct business and law professor at the University of Dayton ("UD"), filed two charges with the Commission: one alleging that UD engaged in employment discrimination against him and another alleging that UD engaged in public accommodation discrimination against him. With respect to both charges, the Commission investigated and declined to sue UD.

A. **Plaintiff's Employment Discrimination Charge**

Plaintiff's employment discrimination charge alleged that UD unlawfully terminated his employment and retaliated against him for engaging in the following activities:

(1) Filing a discrimination and harassment complaint against his former African-American law student, Bridget Jackson, and for complaining about the interim Title IX Coordinator's investigation of his complaint;

(2) Asking UD officials to mediate his claims;

(3) Filing an internal retaliation complaint with the new Title IX Coordinator; and

(4) Filing discrimination charges with the Commission and the EEOC and a discrimination complaint with the Department of Education's Office for Civil Rights.

Despite one investigator's recommendation to the contrary, the Commission's Dayton Regional Office issued a "no probable cause" recommendation on this charge—meaning it was not probable that unlawful discrimination had occurred and a formal complaint would not be issued.

In an application for reconsideration, Plaintiff argued that the Commission should overrule the "no probable cause" recommendation because the Dayton Regional Office addressed only his

---

[1] The following background facts are taken from Plaintiff's Complaints in Case Nos. 3:18-cv-88 and 3:18-cv-89.

first claim, made two incorrect factual findings, and ignored undisputed evidence showing that he had satisfied his burden of establishing prima facie cases of discrimination. Plaintiff alleges that the supervisor responsible for reviewing his application conducted a biased review and drafted a proposed letter denying the application for reconsideration that misapplied the law and ignored undisputed facts.

On February 1, 2018, the Commission held a hearing on Plaintiff's application. At the hearing, Plaintiff claims that the supervisor was given unlimited time to argue her position, but he was given only five minutes. UD's lawyer also presented argument at the hearing that Plaintiff's employment was terminated because it had decided to stop using outside lawyers after Plaintiff submitted late grades due to his busy law practice. Plaintiff claims that this explanation was false. The Commission then held a brief question and answer period and voted 4-1 to deny Plaintiff's application for reconsideration.

### B. Plaintiff's Denial of Public Accommodation Charge

Plaintiff's second charge alleged that UD unlawfully denied him public accommodations in retaliation for engaging in protected activities, namely filing a discrimination and harassment complaint against one of his former law students. Specifically, Plaintiff alleged that UD banned him from the law library and the law building, deactivated his UD Gmail account, and banned him from UD's campus.

As with respect to his employment discrimination claim, Plaintiff alleges that the Commission's Dayton Regional Office issued a no probable cause recommendation as to his claims, despite one investigator's recommendation that they issue a probable cause recommendation. Plaintiff alleges that Dayton Regional Office erred in making this recommendation because it never addressed Plaintiff's third claim and its factual findings

3

regarding his first and second claims misapplied the law and ignored undisputed facts.

Plaintiff filed an application for reconsideration, arguing that the Commission should overrule the Dayton Regional Office's recommendation. Plaintiff argued that the Dayton Regional Office had ignored his contention that UD violated the Department of Education Office for Civil Rights' Title IX Guidelines; that UD's defense that it had deleted his Gmail account pursuant to its "standard protocol" was false; and that the Dayton Regional Office ignored Plaintiff's claim that it denied him a public accommodation when it banned him from campus.

As with his employment discrimination claim, Plaintiff alleges that the supervisor responsible for reviewing his application conducted a biased review and issued a recommendation to deny the application for reconsideration that misapplied the law and ignored undisputed facts.

At the same February 1, 2018 hearing, the Commission heard oral argument on Plaintiff's denial of public accommodation charge. Plaintiff alleges he was given only five minutes to argue his case, while the Commission's supervisor had unlimited time. During a brief question and answer period, UD's lawyer told that Commission that Plaintiff was banned from its facilities due to a safety concern. Plaintiff alleges that this explanation was false and that he told the Commission that neither the Law School Dean nor UD's General Counsel raised any safety concern when they banned Plaintiff from the law library and law building. The Commission then voted to 4-1 to deny Plaintiff's application for reconsideration.

## II. ANALYSIS

### A. Motion to Dismiss § 1983 Claims

Plaintiff alleges that Defendants violated his rights to substantive and procedural due process and equal protection under the Constitution. These claims arise under 42 U.S.C. § 1983, which creates a civil cause of action against individuals who, while acting under color of state law,

4

deprive a person of the "rights, privileges or immunities secured by the Constitution or laws" of the United States. *See Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012). Defendants argue that Plaintiff's § 1983 claims should be dismissed because the Court lacks subject matter jurisdiction and Plaintiffs' Complaints fail to state a claim upon which relief can be granted. The Court addresses only the first of these arguments because it is dispositive of Defendants' Motions to Dismiss.

### 1. Subject Matter Jurisdiction

Defendants bring a facial attack against Plaintiff's Complaints under Federal Rule of Civil Procedure 12(b)(1). When a defendant brings such an attack, the court must assume the truth of the plaintiff's allegations. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

### a. Ohio Revised Code § 4112.06

Defendants first argue that the Court does not have subject-matter jurisdiction to consider any challenges to the Commission's investigation and decisions under Ohio Revised Code § 4112.06. (Doc. 5 at 8 (citing *Gilbert v. Correction Reception Ctr.*, No. 2:07-CV-624, 2008 WL 4347231, at *7 (S.D. Ohio Sept. 19, 2008)).) In *Gilbert*, the plaintiff alleged that the Commission failed to adequately investigate his complaint of retaliation and unfairly determined that there was "no probable cause" for that complaint. 2008 WL 4347231, at *6. The plaintiff further alleged that, in doing so, the Commission participated in a conspiracy to violate his civil rights. *Id.* Upon consideration of a motion to dismiss, the district court noted that the Ohio courts of common pleas have "exclusive jurisdiction" to review a final order of the Commission under Ohio Revised Code § 4112.06(A), (F).

Section 4112.06(A) provides:

Any complainant, or respondent claiming to be aggrieved by a final order of the

5

> commission, including a refusal to issue a complaint, may obtain judicial review thereof, and the commission may obtain an order of court for the enforcement of its final orders, in a proceeding as provided in this section. Such proceeding shall be brought in the common pleas court of the state within any county wherein the unlawful discriminatory practice which is the subject of the commission's order was committed or wherein any respondent required in the order to cease and desist from an unlawful discriminatory practice or to take affirmative action resides or transacts business.

Ohio Rev. Code § 4112.06(A). Subsection (F) of the same statute provides that "[t]he jurisdiction of the court shall be exclusive and its judgment and order shall be final subject to appellate review." Ohio Rev. Code § 4112.06(F). Pursuant to the plain language of § 4112.06, the district court held that, to the extent the plaintiff challenged the Commission's "'no probable cause' determination and the adequacy of the investigation leading up to it," it lacked jurisdiction to consider his claim.

As in *Gilbert*, this Court does not have subject-matter jurisdiction to consider a challenge to the Commission's investigation and "no probable cause" determination. Although Defendants raise this argument with respect to Plaintiff's § 1983 claims, it is better directed to his request for judicial review of the Commission's decisions. The § 1983 claims are based on alleged violations of Plaintiff's constitutional rights. Regardless, insofar as Defendants argue that the court of common pleas has exclusive jurisdiction to review the Commission's investigation and determination, they are correct.

### b. Whether the Commission and its Officials Are "Persons"

Defendants next argue that the Commission is not a "person" who may be sued under 42 U.S.C. § 1983 because it is an agency of the State of Ohio. The Supreme Court has held that neither a State nor its officials acting in their official capacities are "persons" within the meaning of § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (analyzing operation of States' sovereign immunity under the Eleventh Amendment and 42 U.S.C. § 1983).

6

Accordingly, Defendants also argue that the Individual Defendants are not "persons" within § 1983 because they are state officials acting in their official capacities. *Id.*

Plaintiff concedes that the Commission cannot be sued under § 1983 but contends that the Individual Defendants may be sued under a limited exception to their immunity under the Eleventh Amendment. Namely, Plaintiff argues that his claims against the Individual Defendants may proceed because federal courts are permitted "to enjoin state officers in their official capacity from prospectively violating a federal statute or the Constitution." *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 904 (6th Cir. 2014). This argument fails, however, because Plaintiff does not seek prospective relief from the Individual Defendants.

As plainly stated in his Complaints, Plaintiff seeks prospective relief from only the Commission.[2] Specifically, Plaintiff asks the Court to order the Commission to issue a complaint against UD based on all of Plaintiff's claims and schedule a hearing before an administrative law judge "as soon as possible." (Doc. 4 at 37, 88 Case; Doc. 3 at 36, 89 Case.) Only the Commission can perform these requested acts, as only the Commission has the statutory authority to enter or vacate orders, issue administrative complaints, and hold hearings. Ohio Rev. Code §§ 4112.04, 4112.05. Therefore, even if Plaintiff has identified an exception to the Individual Defendants' Eleventh Amendment immunity, it does not apply by its own terms in this case.

The Commission and the Individual Defendants are entitled to dismissal of Plaintiff's § 1983 claims because they are not "persons" within the meaning of the statute.

---

2 Plaintiff also asks for an injunction against UD prohibiting it from continuing to ban Plaintiff from its law library, law building, and campus until the administrative law judge has heard argument regarding the ban. (Doc. 4 at 37, 88 Case; Doc. 3 at 37, 89 Case.) The Court cannot order such relief, however, as UD is not a party to this case.

### c. **Defendants' Other Immunity Defenses**

The Individual Defendants argue that they have absolute immunity because they are administrative officers responsible for deciding whether to proceed with a case. (Doc. 5 at 10, 88 Case; Doc. 5 at 10, 89 Case.) For this proposition, they cite *Butz v. Economou*, 438 U.S. 478, 507 (1978). In that case, the plaintiff filed suit against a number of officials in the department of agriculture claiming that they began an investigation against him in retaliation for his criticism of that agency. *Id.* at 480. The question before the Supreme Court was whether it should extend personal immunity to the officials from claims based on alleged violations of constitutional rights. After discussing the statutory safeguards enacted to guarantee the independence of the department of agriculture's hearing examiners, the Supreme Court reasoned:

> [W]e think that the risk of an unconstitutional act by one presiding at an agency hearing is clearly outweighed by the importance of preserving the independent judgment of these men and women. We therefore hold that persons subject to these restraints and performing adjudicatory functions within a federal agency are entitled to absolute immunity from damages liability for their judicial acts. Those who complain of error in such proceedings must seek agency or judicial review.
>
> We also believe that agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts. The decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution. An agency official, like a prosecutor, may have broad discretion in deciding whether a proceeding should be brought and what sanctions should be sought. The Commodity Futures Trading Commission, for example, may initiate proceedings whenever it has "reason to believe" that any person "is violating or has violated any of the provisions of this chapter or of the rules, regulations, or orders of the Commission." 7 U.S.C. § 9 (1976 ed.). A range of sanctions is open to it. *Ibid*.
>
> The discretion which executive officials exercise with respect to the initiation of administrative proceedings might be distorted if their immunity from damages arising from that decision was less than complete. *Cf. Imbler v. Pachtman*, 424 U.S., at 426 n. 24, 96 S.Ct., at 993 n. 24. While there is not likely to be anyone willing and legally able to seek damages from the officials if they do not authorize the administrative proceeding, *cf. id*., at 438, 96 S.Ct., at 998 (WHITE, J.,

> concurring in judgment), there is a serious danger that the decision to authorize proceedings will provoke a retaliatory response. An individual targeted by an administrative proceeding will react angrily and may seek vengeance in the courts. A corporation will muster all of its financial and legal resources in an effort to prevent administrative sanctions. 'When millions may turn on regulatory decisions, there is a strong incentive to counter-attack.'
>
> The defendant in an enforcement proceeding has ample opportunity to challenge the legality of the proceeding. An administrator's decision to proceed with a case is subject to scrutiny in the proceeding itself. The respondent may present his evidence to an impartial trier of fact and obtain an independent judgment as to whether the prosecution is justified. His claims that the proceeding is unconstitutional may also be heard by the courts. Indeed, respondent in this case was able to quash the administrative order entered against him by means of judicial review. *See Economou v. U. S. Department of Agriculture*, 494 F.2d 519 (C.A.2 1974).
>
> We believe that agency officials must make the decision to move forward with an administrative proceeding free from intimidation or harassment. Because the legal remedies already available to the defendant in such a proceeding provide sufficient checks on agency zeal, we hold that those officials who are responsible for the decision to initiate or continue a proceeding subject to agency adjudication are entitled to absolute immunity from damages liability for their parts in that decision.

*Butz*, 438 U.S. at 514–16. The Supreme Court then concluded that agency attorneys are also entitled to immunity because it is in the public interest that they be able to adjudicate matters based on a complete record. *Id*. at 517.

The question, of course, is whether the immunity extended to federal officials in *Butz* extends to state officials acting in the same capacity. The short answer is that, yes, it does in some circumstances. The Sixth Circuit considered this question in *Watts v. Burkhart*, 978 F.2d 269 (6th Cir. 1992), a case in which a physician sued a state medical licensing board for damages caused by the board's removal of his license to prescribe controlled substances. The Sixth Circuit noted that, earlier in the *Butz* opinion, the Supreme Court indicated that "unless Congress should direct otherwise, it would be wrong to distinguish between state officials and federal officials in deciding on immunity from liability for damages under § 1983." *Watts*, 978 F.2d at 273. "It

9

would seem to follow," the Sixth Circuit continued, "that state officials subject to restraints comparable to those imposed by the Administrative Procedure Act and performing adjudicatory functions in resolving potentially heated controversies are entitled to absolute immunity from damages liability for their judicial acts." *Id.* The Sixth Circuit ultimately determined that the state medical board was subject to restraints comparable to those in the Administrative Procedure Act and its officials were therefore entitled to immunity. *Id.* at 276-77.

Plaintiff did not directly respond to the argument that the Individual Defendants are entitled to absolute immunity as administrative officers under *Butz* and its progeny. As a result, this argument is not as well fleshed out as it might have been if it were opposed. Reviewing the Ohio Revised Code, however, the Commission is subject to restraints that protect its autonomy and require it to function as a quasi-judicial body. For example, the Commission consists of five members, not more than three of whom shall be of the same political party. Ohio Rev. Code § 4112.03. Commission members serve five-year terms—one year longer than the term of the governor who appoints them. *Id.* Their pay is determined by the director of administrative services pursuant to legislated pay schedules. *Id.*; Ohio Rev. Code § 124.15. A member of the Commission may be removed from office only for inefficiency, neglect of duty, misconduct, or malfeasance in office. *Id.*

The statutory procedures for considering a claim are similar to those customary in a court of law. Ohio Rev. Code § 124.15. If the Commission determines it is probable that unlawful discrimination has occurred, and fails to eliminate the practice through alternative means, it must file an administrative complaint. *Id.* The party accused of misconduct has a right to respond to the complaint and defend itself at a formal hearing on the charges. *Id.* The complaining or aggrieved party also has the right to attend and participate in the hearing. *Id.* If the Commission

finds, based upon reliable, probative and substantial evidence presented at a hearing, that an unlawful discriminatory practice has occurred, then it must state its findings of fact and conclusions of law along with its order directing compliance and any further affirmative action. *Id.*

In light of these provisions and the allegations in the Complaints, the Individual Defendants are entitled to absolute immunity as administrative officers acting in quasi-judicial or quasi-prosecutorial roles in deciding whether to proceed on Plaintiff's complaints.

The Individual Defendants also argue that they are entitled to qualified immunity against any claims brought against them in their personal capacities because their actions did not violate any clearly established right. As the Supreme Court has explained:

> The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez,* 540 U.S. 551, 567, 124 S.Ct. 1284, 157 L.Ed.2d 1068 (2004) (KENNEDY, J., dissenting) (quoting *Butz v. Economou*, 438 U.S. 478, 507, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), for the proposition that qualified immunity covers "mere mistakes in judgment, whether the mistake is one of fact or one of law").

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The Supreme Court mandated a two-step test for determining whether qualified immunity applies. First, a court must decide whether the facts make out a violation of a constitutional right. *Id.* at 232. Second, the court must decide if the right at issue was "clearly established" at the time of the alleged violation. *Id.* "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional

right." *Id.* Courts applying this test often consider the second step first, which is dispositive if answered in the negative regardless of whether or not a violation is alleged.

Plaintiff contends that the Individual Defendants violated clearly established constitutional rights to equal protection, substantive due process and procedural due process. As to the equal protection claim, Plaintiff alleges that the Individual Defendants treated him differently than they treated similarly situated charging parties outside his protected class when they failed to investigate three of his retaliation claims and one of his denial of public accommodation claims before issuing a final order dismissing his charges. (Doc. 7 at 8, 88 Case; Doc. 9 at 9, 89 Case.) As to the substantive due process claim, Plaintiff alleges that the Commission should have obtained certain files from UD as part of its investigation, refrained from reviewing a letter containing a proposed resolution of Plaintiff's application for reconsideration before the Commission's hearing, and investigated certain disputed issues of fact raised during the hearing. (Doc. 7 at 9, 88 Case; Doc. 9 at 10, 89 Case.) As to the procedural due process claim, Plaintiff alleges that the Individual Defendants denied him his rights to "fair and impartial investigators," cross-examine witnesses, the timely completion of the Commission's investigation, and consideration of all of the evidence submitted in support of his claims. (Doc. 7 at 9-11, 88 Case; Doc. 9 at 10-12, 89 Case.)

While Plaintiff clearly articulates the precise rights that he believes were violated, he does not argue that those alleged rights were clearly established. The Individual Defendants, for their part, argue that there is no constitutional right to an investigation of complaints filed with the Commission. To the contrary, under the Ohio Revised Code, the Individual Defendants have discretion regarding their investigations, their "no probable cause" recommendations, and their decisions to issue administrative complaints. *See Westbrook v. Ohio Civ. Rights Com.*, 17 Ohio St. 3d 215, 217, 478 N.E.2d 799, 801-2 (1985) (holding the commission's "preliminary

investigation is not mandatory;" "the commission has discretion in determining the type of investigation undertaken;" "there is no absolute duty to make a probable cause determination;" and "the commission has discretion in determining whether to issue a complaint after an investigation"). They further argue that, even if they did have a statutory duty to investigate complaints in a certain manner, the failure to fulfill that duty would be insufficient to state a claim under § 1983. *See Davis v. Scherer*, 468 U.S. 183, 194 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision.").

The Court is persuaded that, even if Plaintiff has alleged the violation of a constitutional right, none of those rights were clearly established at the time of the alleged violation. The Individual Defendants are therefore also entitled to qualified immunity on Plaintiff's § 1983 claims.

### 2. Whether the Complaints State a Claim under § 1983

As the Court has found that Defendants are entitled to dismissal of Plaintiff's § 1983 claims on jurisdictional and immunity grounds, it does not consider whether these claims state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).

### B. MOTION TO REMAND REQUEST FOR JUDICIAL REVIEW

Plaintiff's Complaints contain petitions for judicial review of the Commission's decisions under Ohio Revised Code § 4112.06. As previously mentioned, under Ohio Revised Code § 4112.06(F), the Ohio courts of common pleas have exclusive jurisdiction over requests for judicial review of the Commission's decisions. Defendants ask that Plaintiff's petitions for judicial review be remanded to state court. Plaintiff agrees that remand is appropriate. (Doc. 7 at 16, 88 Case; Doc. 9 at 18, 89 Case.) Accordingly, Plaintiff's petitions will be remanded.

## III. CONCLUSION

For the reasons above, the Court **GRANTS** Defendants' Motions to Dismiss, **REMANDS** Plaintiff's petitions for judicial review to the Montgomery County Court of Common Pleas and **TERMINATES** this action.

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, October 26, 2018.

s/Thomas M. Rose

———————————————
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE